**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NORTH CAROLINA**
**WILMINGTON DIVISION**

IN RE:                                              **CHAPTER 11**
**ASHLEY T. WALLACE and**                            **CASE NO. 16-00859-5-DMW**
**SARA J. WALLACE**
     **DEBTORS**

## THIRD AMENDED PLAN OF REORGANIZATION

Pursuant to the provisions of 11 U.S.C. § 1123, the Debtors hereby submit the following Third Amended Plan of Reorganization (the "Plan"):

## I.  SUMMARY OF PLAN

The Plan contemplates a reorganization of the Debtors' obligations. In accordance with the Plan, the Debtors intend to satisfy certain creditor claims from income earned through future wages and distributions.  The Plan is based on the Debtors' belief that the interests of their creditors will be best served if it is allowed to reorganize its debts as described herein.

The Debtors' liabilities will be paid according to the priorities of the Bankruptcy Code and the Orders of this Court. The specific amounts and terms of payment will be made according to the treatment of each respective creditor.

## II.  DEFINITIONS

1.      "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under § 507(a)(1) of the Bankruptcy Code.

2.      "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.      "AVAILABLE CASH" shall mean the total cash available for distribution on the "Effective Date" (as the term is defined below).

4.      "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. § 101, et seq.

1

5.      "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6.      "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

7.      "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8.      "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. § 1129.

9.      "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. § 1129.

10.     "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11.     "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

12.     "CREDITORS" shall mean all creditors of the Debtor holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13.     "DEBTOR" shall mean the Debtor (or Debtors, if more than one) identified on the first page of this Plan.

14.     "DISBURSING AGENT" shall mean the Debtor or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15.     "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16.     "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17.     "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

18.     "ESTATE" or "BANKRUPTCY ESTATE" shall mean all legal or equitable interests of the Debtor in property, whether personally held or not, at the time of the Debtor's

bankruptcy filing.

19.      "EFFECTIVE DATE" shall be that date on which the Confirmation Order becomes final and non-appealable.

20.      "FINAL DECREE" shall mean the order of this Court pursuant to FEDERAL RULE OF BANKRUPTCY PROCEDURE 3022 closing this case.

21.      "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

22.      "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

23.      "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined above).

24.      "PETITION DATE" shall mean the date the Debtor filed a voluntary chapter 11 petition.

25.      "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

26.      "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under § 507.

27.      "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

28.      "SALE" shall mean the disposition of certain assets of the Debtor through a transfer of ownership from the Debtor to another person or entity as set forth in this Plan.

29.      "SALE PROCEEDS" mean the remaining funds of a sale of certain assets of the Debtor as set forth in this Plan, after payment of all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions and any other costs permitted under 11 U.S.C. § 506(c)).

30.      "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrance which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

31.     "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtor has commenced the distribution of initial Plan payments to all creditor classes.

32.     "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to 11 U.S.C. § 507(a)(8).

## III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Debtor classifies the following classes of claims, indicating whether said Class is impaired or unimpaired, and proposes the following treatment:

A.     **Class 1 - Administrative Costs:**

(1)     Description of Claims.  Class 1 consists of claims for any cost or expense of administration pursuant to 11 U.S.C. §§ 503, 506, and 507.

The following Claims of professionals will be paid subject to Court approval:

Gillespie & Murphy, P.A.          Attorney for the Debtor          To be determined by the Court

(2)     Impairment.    This class will be impaired.

(3)     Treatment.      Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten (10) days from the Effective Date of the Plan or upon entry of an Order allowing such Administrative Claim, whichever is later, except that professional fees shall be paid in full upon entry of an Order allowing the same, or pursuant to any agreement between the Debtor and the holder of a Class 1 Allowed Claim.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim that agrees to receive payments over time will receive payments from the Debtor until paid in full.  Such Claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of four percent (4%) per annum.

B.     **Class 2 – Ad Valorem Taxes:**

(1)     Description of Claims.  Class 2 consists of Claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtor is aware of the following Claim(s) in this Class:

Brunswick County Tax Collector                    $2,431.75
Watauga County Tax Collector                      $  740.09

4

Town of Beech Mountain                                    $1,611.40

(2)    <u>Impairment</u>.    This class will be unimpaired.

(3)    <u>Treatment</u>.    The Debtor expects Brunswick County taxes to be paid through the escrow account of the secured creditor, Wells Fargo Bank, N.A. and further expects the outstanding ad valorem taxes owed to the Watauga County Tax Collector and the Town of Beech Mountain to be paid from the sales proceeds of the real property located in Beech Mountain. To the extent the Debtor must pay any Claims in this class, the Debtor proposes to pay remaining Claims in this class with annual payments over a period of five (5) years from the Date of the Order of Relief.  Annual payments shall commence on that date which is one year following the Effective Date and shall continue every consecutive year thereafter, and shall include interest at the applicable rate imposed by the tax collector until paid in full. The Debtor may also satisfy Claims in this class in whole or in part through the sale or foreclosure of real property or have a secured creditor pay the taxes through escrows or in the event real property is surrendered to the secured creditor.

Ad valorem taxes for the current tax year may be treated as a prepetition claim and not as an administrative expense.  *See* <u>*In Re St. Lawrence Homes, Inc.*</u>, *Case No. 09-00775-8, Order dated July 28, 2010, citing* <u>*In Re Members Warehouse, Inc*</u>*., 991 F.2d 116, 118-119 (4th Cir. 1993).*

**C.    <u>Class 3 – Tax Claims:</u>**

(1)    <u>Description of Claims</u>.    Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law.  The Debtor is aware of the following claim(s) in this Class:

| | | |
|---|---|---|
| Internal Revenue Service | Claim 2 | $8,219.91 |
| NC Department of Revenue | Claim 13 | $7,265.48 |

(2)    <u>Impairment</u>. This class will be unimpaired.

(3)    <u>Treatment</u>.   The Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date.   The Debtor does not anticipate that any such claims will be filed.

**Unsecured priority tax claims**, if any, described in Bankruptcy Code § 507(a)(8) shall be paid in full in quarterly installments over a period not exceeding five (5) years from the Petition Date and payments shall commence on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter, with interest at the statutory rate as of the Effective Date.  For feasibility purposes, the Debtors estimate that they will make sixteen (16) quarterly payments of $1,163.21.

**Secured claimants**, if any, shall retain their secured interest in the property of the Debtor.  The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate from the Effective Date. Debtor shall pay these Claims over a period not to exceed five (5) years from the Petition Date beginning on the earlier of January 15th, April 15th, July 15th, or October 15th following the Effective Date and shall continue quarterly thereafter.

In the event that the Debtor fails to timely make a required payment as to any claim of the North Carolina Department of Revenue (the "Department"), then, subject to a ten (10) day right to cure following written notice of default from the Department, the Department shall be permitted to exercise any and all of its collection remedies under non-bankruptcy law as to any and all of its claims without further order of the Court. The rights of the Department to setoff under 11 U.S.C. § 553 shall not be altered by the Plan or the confirmation order entered in this matter and are expressly reserved.  The claim of the North Carolina Department of Revenue is subject to adjustment on account of federal corrections, as required by N.C. Gen. Stat. § 105-130.20 (for corporations, LLCs and other entities) and N.C. Gen. Stat. § 105-159 (for individuals).  Notwithstanding any other provisions of the Plan and the Confirmation Order, the Department shall retain any and all statutory tax liens that may have arisen by operation of statute prior to the Petition Date, except to the extent expressly stated in the Plan below.

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims."

### D.    Class 4 – Wells Fargo Home Mortgage

(1)    <u>Description of Debt</u>.  The Debtor is indebted to Wells Fargo Home Mortgage ("Wells Fargo") pursuant to a loan in the original principal amount of $417,000.00. The loan is secured by a deed of trust on the Debtors' primary residence located at 10299 Croft Pointe Lane, Leland, North Carolina, 28451 and is recorded in Book 2903, at Page 707, in the office of the Register of Deeds of Brunswick County, North Carolina.  The deed of trust is a first lien on the property.  As of the date of the filing of the Petition, the claim of Wells Fargo was approximately $368,927.00.

(2)    <u>Impairment</u>.    This class will be unimpaired.

(3)    <u>Treatment</u>.  This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding principal and interest due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to 11 U.S.C. § 506(b); less (d) all post-petition payments. Wells Fargo shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to Bankruptcy Code § 1129(b)(2)(A)(i)(I), until the secured portion of this claim is paid in full.  The Debtors shall pay the obligation according to the original terms of the agreement between the Debtors and the creditor; provided, however, that the pre-petition and post-petition arrearage shall be paid in sixty (60) equal, consecutive monthly installments beginning on that date which is thirty (30) days after the Effective Date.

### E.   Class 5 – Bank of the Ozarks

(1)   Description of Debt.   The Debtor is indebted to Bank of the Ozarks ("Ozarks") pursuant to a loan in the original maximum principal amount of $240,000.00. The loan is secured by a deed of trust on the Debtors' primary residence located at 10299 Croft Pointe Lane, Leland, North Carolina, 28451 ("Property") and is recorded in Book 2903, at Page 725, in the office of the Register of Deeds of Brunswick County, North Carolina.  The deed of trust is a second lien on the Property.  The Debtors caused an appraisal to be completed regarding the value of the property. As of April 2, 2016, which was revised on September 15, 2016, with no change in value.  The value of the Property as of April 2, 2016 and September 15, 2016 was $335,000.00, which the Debtors consider an accurate value of the Property.  As of the date of the filing of the Petition the lien of Wells Fargo was $365,253.40 and exceeded the value of the Property, rendering the claim of Ozarks unsecured.

(2)   Impairment.   This class will be impaired.

(3)   Treatment.   This obligation shall be treated as an unsecured claim and paid in accordance with the terms in the class entitled "General Unsecured Claims."  Upon entry of the Order confirming the Debtor's Chapter 11 Plan of Reorganization, execution of the deed of trust in favor of the Class 7 entitled "General Unsecured Claims," recording of the deed of trust for such class in the office of the Register of Deeds of Watauga County, North Carolina, and substantial completion of the Debtors' Plan of Reorganization, the lien of Ozarks recorded in Book 2903, Page 725, in the office of the Register of Deeds of Brunswick County, North Carolina, shall be deemed satisfied and cancelled of record.  The Debtors shall file a copy of the Order Confirming Plan and the Order of substantial completion of the Debtors' Plan of Reorganization to be filed in the office of the Register of Deeds of Brunswick County, North Carolina to evidence cancellation of the lien.

### F.   Class 6 – Volkswagon Credit

(1)   Description of Debt.   The Debtor is indebted to Volkswagon Credit ("VW") pursuant to a loan in the original principal amount of $24,224.40. The loan is secured by a lien on a 2013 Volkswagon Jetta with VIN ending in 87254.  VW filed claim number 4 in the amount of $13,769.17.

(2)   Impairment.   This class will be impaired.

(3)   Treatment.   This obligation shall be treated as a fully secured obligation in an amount equal to (a) the outstanding principal and interest due on the Petition Date; plus (b) interest accrued through the Effective Date at the contractual non-default rate of interest; plus (c) costs and expenses approved by the Court pursuant to 11 U.S.C. § 506(b); less (d) all post-petition payments.  VW shall retain its lien(s) with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claims are paid as outlined herein.  The Debtor will repay the Secured Amount in sixty (60) equal consecutive monthly payments with interest at the current contractual rate of 1.65% per annum, beginning on

7

the 15th day of the first full month after the Effective Date.  For feasibility purposes, the Debtors estimate that monthly payments will be in the amount of $239.24.

### G.    Class 7 - General Unsecured Claims and Educational Loans

(1)    Description of Class.  The approximate total of liquidated, non-contingent or disputed general unsecured claims, including educational loans and known deficiency claims based on claims filed or scheduled as of the date of the filing of this Plan is $404,484.56, as shown on Exhibit B attached to the Disclosure Statement.

(2)    Impairment.  This class will be impaired.

(3)    Treatment.  In accordance with the liquidation analysis attached as Exhibit C to the Disclosure Statement, the Debtors shall pay the Class 7 general unsecured creditors the sum of $136,000.00.  Upon confirmation of the Debtors' Plan, the Debtors shall execute a promissory note in the form attached hereto as Exhibit A and in the original principal amount of $136,000.00.  To secure payment to the Class 7 general unsecured creditors, the Debtors shall further execute a Deed of Trust to be recorded in the office of the Register of Deeds of Watauga County, North Carolina, in the form attached hereto as Exhibit B, granting the Class 7 general unsecured creditors a lien on the real property located at 998 Beech Mountain Parkway, Beech Mountain, North Carolina (the "Property").  The Trustee of the Deed of Trust shall be an independent, neutral third party.  The Debtors shall market and sell the Property to pay the Class 7 general unsecured creditors.  Within fourteen (14) days after the Effective Date, the Debtors shall employ Jason Eldreth of A Plus Realty ("A Plus"), 201 Westside Drive, Vilas, North Carolina as the listing agent and manager of the Property.  The Debtors shall have a marketing period of six (6) months after the Effective Date to market and sell the Property.  The Debtors shall direct A Plus to list the Property for sale for a purchase price that A Plus believes is reasonable and will obtain the highest offer, but in any event, no less than $155,000.00.  In the event that the Debtors do not receive a bona fide offer to purchase the Property within six (6) months after the Effective Date, the Debtors shall direct A Plus to employ an auctioneer to auction the Property.  The Debtors shall direct the closing agent for the sale of the Property to pay the net proceeds from the sale of the Property to the general unsecured creditors, pro-rata. The net proceeds from the sale of the Property shall be the gross proceeds from the sale of the Property less ordinary and customary costs and expenses of sale, including a real estate commission, auctioneer's commission, outstanding ad valorem taxes, attorneys' fees, revenue stamps, ordinary and customary pro-rated expenses and the quarterly fee due to the United States Bankruptcy Court related to the sale, if any.  In the event that the net sales proceeds are insufficient to pay the balance of the promissory note, the Debtors shall pay the outstanding balance of the promissory note in annual payments over a period of five (5) years from the date of the sale of the Property with interest at the annual rate of 3%.  In the event that the net sales proceeds exceed $136,000, the Debtors shall receive the exemption amount related to the Property of up to $9,200, as shown on the Debtors' Petition.  In the event that the net sales proceeds exceed $136,000 and the Debtors' exemption amount, the excess net sales proceeds shall be distributed to Class 7, general unsecured creditors.

To satisfy the requirements of the "absolute priority rule," as set forth in 11 U.S.C. § 1129(b)(2)(B)(ii), the Debtors shall invoke the "new value exception." For purposes of this Plan, Ms. Wallace's mother, Judy Jones, shall contribute the sum of $750.00 to the Class 7 general unsecured creditors to satisfy the requirements of 11 U.S.C. § 1129(b)(2)(B)(ii) on the Effective Date of the Plan. The Debtors reserve the right to supplement or amend the amount and source of any "new value" necessary to secure confirmation of the Plan, and as may be required by further orders of the Court.

Upon payment of the general unsecured claims pursuant to the terms of this Plan, the Debtors shall resume regular payments of such educational loans that are non-dischargeable under 11 U.S.C. § 523.

The Debtors may investigate and pursue causes of action, with the purpose of reducing claims held by the Debtors to value for distribution pursuant to the priorities of the Bankruptcy Code and future orders of this Court for the benefit of the Debtors and the Debtors' creditors.

### H.   Class 8 - General Unsecured Claims - Guaranties

(1)   <u>Description of Class</u>.   The approximate total of unliquidated, contingent and disputed general unsecured claims based on claims filed as of the date of the filing of this Plan is $1,554,374.40 as shown on the Exhibit B, attached to the Amended Disclosure Statement. Each of the claims in this class are guarantees on debt asserted to be owed by related entities of the Debtors for which there are additional parties, defendants, or insurance proceeds available to pay the claims of the creditors, as more fully described in the Amended Disclosure Statement.

(2)   <u>Impairment</u>.   This class will be impaired.

(3)   <u>Treatment.</u>   The Debtors shall file objections to the claims of the Class 8 General Unsecured Creditors. If one or more of the claims are allowed, the Debtors shall pay the allowed claims of the Class 8 General Unsecured the sum of $1,000.00, pro-rata, within one (1) year of the date of the last order allowing any such claim.

To satisfy the requirements of the "absolute priority rule," as set forth in 11 U.S.C. § 1129(b)(2)(B)(ii), the Debtors shall invoke the "new value exception." For purposes of this Plan, Ms. Wallace's mother, Judy Jones, shall contribute the sum of $250.00 to the Class 8 general unsecured creditors to satisfy the requirements of 11 U.S.C. § 1129(b)(2)(B)(ii) on the Effective Date of the Plan. The Debtors reserve the right to supplement or amend the amount and source of any "new value" necessary to secure confirmation of the Plan, and as may be required by further orders of the Court.

### IV.   TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Except as otherwise specified in this Plan, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not

reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  The Debtor hereby assumes all leases in which the Debtor is the Lessor and all shareholder agreements and operating agreements related to entities owned by the Debtor, if any.

Any person with a Claim arising from such rejection shall be deemed to hold a general unsecured claim and shall file a proof of claim within sixty (60) days of the Effective Date or be forever barred from asserting any Claim relating to such rejection.

## V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

A.     The Debtor proposes to make payments under the Plan from income earned through future wages and distributions.

With respect to each claim described above in Article III, except as otherwise expressly provided in Article III, the Debtor shall keep the collateral insured pursuant to the terms of the/each security instrument (i.e., the deed of trust, mortgage, security agreement or other applicable security instrument) (herein called the "Security Instrument," whether one or more) which secures the debt.  If the Debtor fails to make a payment as provided herein within twenty (20) days after its due date or fails to keep the collateral insured as provided herein within thirty days after written notice from the secured creditor of such failure, the secured creditor may declare the debt in default, give notice thereof to the Debtor, and exercise its remedies against the collateral that secures the debt.  The provisions of the Security Instrument that allow the secured creditor to foreclose on the collateral in the event of a default and all other provisions of the Security Instrument that relate to the collateral shall remain in effect.  Any financial covenants or other covenants in any of the loan documents relating to the debt, including but not limited to the Security Instrument, that do not relate to the preservation, protection, repossession or foreclosure of the collateral shall not be effective post-confirmation.

B.     Sale Free and Clear of Liens.  Any real and personal property owned by the Debtor that will be sold pursuant to this Plan will be sold free and clear of all liens, encumbrances, claims, interests, or other obligations.  In order to expedite the sale process, provide clear title to the properties sold, and satisfy certain anticipated requirements of title insurance companies providing title insurance to purchasers, simultaneous with the entry of the Order Confirming Plan, the Court will enter a free and clear order, which shall provide that all sales will be free and clear of all liens, interests, and other claims or interests.  All real or personal property sold by the Debtor shall be sold pursuant to the free and clear order to be entered.  No further motions related to the sales of property shall be required; provided however, the Debtor may file such motions and seek such orders to the extent needed to provide reasonable comfort or accommodation to the purchaser(s) or to specify the method of distribution of the sales proceeds.

C.     Distribution of Sales Proceeds.  Upon the sale of any real or personal property proposed to be sold by this Plan, the liens secured by such property shall attach to the net proceeds of sale remaining after payment of costs of sale and all reasonable and ordinary closing costs, (including but not limited to ad valorem taxes, commissions, and any other costs permitted

10

under Section 506(c) of the Code), and shall be paid to lienholders in accordance with the priorities of such liens, and then to other creditors in accordance with the priorities of the Code. In the event the net proceeds of sale are insufficient to satisfy all claims within a class, such proceeds to be distributed to such class will be distributed pro rata. The Debtor may elect to file additional motions with the Court setting forth the proposed distribution of any excess sales proceeds prior to distribution to creditors.

D.      Preservation of Right to Credit Bid.  All secured creditors shall retain the rights granted to them under § 363(k) to purchase their collateral via a credit bid upon the same or better terms of the proposed purchaser.  In the event of a private sale which shall not satisfy the claim of the secured creditor(s) in full, the Debtor shall provide the secured creditor with a copy of the purchase contract in the manner designated by such creditor and such creditor shall have until no later than one hour before the Debtor's deadline for accepting such contract to inform the Debtor in writing whether it wishes to purchase the property via a credit bid upon the same or better terms than that offered by the purchaser.  In the event the creditor does not provide written notification to the Debtor that it will purchase the property by credit bid, the creditor shall be deemed to waive its right to credit bid.  Each secured creditor shall be responsible for providing the Debtor with information concerning the method by which it wishes to be notified to potential purchase contracts for purposes of credit bidding (i.e. fax, electronic mail, or telephonic notification).

E.      Deficiency Claims.  Each secured creditor who is entitled to foreclose on its collateral under the terms of the Plan shall have 120 days after the Effective Date to complete the foreclosure of its collateral.  Each such creditor shall have 150 days following the Effective Date to file a proof of claim for any deficiency or be forever barred from asserting any deficiency claim and such obligation shall be deemed paid in full.  Such proof of claim shall include an itemization of the principal, interest, and other costs.  Any such deficiency claim shall be treated in the unsecured creditor class.  In the event the Debtor obtains his Final Decree prior to the determination of any deficiency claim, such secured creditor shall inform the Disbursing Agent of such deficiency claim within the same time period.  In such event, a proof of claim form shall not be required, but the secured creditor shall provide notice of such deficiency claim to the Disbursing Agent in a writing containing the same information required in a proof of claim.

F.      De Minimis Distributions.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim. Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

G.      Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

H.      Preservation of Avoided Transactions for the Benefit of the Estate.  All

transactions avoided or otherwise set aside pursuant to Sections 544, 547, 548, and/or 549, if any, shall be preserved for the benefit of the Estate pursuant to Section 551 and applicable case law. Funds received from such transactions shall be distributed to creditors according to the priorities of the Code. In the case of any lien that has been avoided which encumbered certain properties of the Debtor and has since been avoided, the lien shall remain on the public record and shall remain an encumbrance upon the real property. However, all distributions made towards such deed of trust shall be distributed not to the named beneficiary of such deed of trust, but shall instead be paid to the Disbursing Agent for distribution to creditors.

I.      Timing of Distributions. Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day. Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

J.      All payments or distributions made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied first to outstanding interest and then to principal. In the event that a creditor claims that it is entitled to costs and/or attorneys fees, such creditor must file a fee application with the Court and such costs and attorneys fees must be approved by the Court prior to such costs and attorneys fees becoming part of the creditor's allowed claim.

K.      The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

L.      Revocation of Plan. The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of the Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

M.      The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

N.      Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

O.      Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and

all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the FEDERAL RULES OF BANKRUPTCY PROCEDURE, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan.  Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. § 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

P.    Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

Q.    All objections to claims, fee applications, and adversary proceedings will be filed with the Court within sixty (60) days after the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

R.    Claims Paid by Third Parties.  To the extent a claim holder receives payment in full or in part on account of such claim from a party that is not the Debtor, such creditor shall, within two (2) weeks therefore, inform the Debtor of such payment, and such creditor's claim shall be reduced accordingly for purposes of distribution under the Plan.

S.    Exemption from Transfer Taxes.  Pursuant to § 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer under, in furtherance of, or in connection with the Plan, including without limitation, deeds, or bills of sale or assignments of personal property executed in connection with any of the transactions contemplated under the Plan, will not be subject to any stamp, real estate transfer, mortgage recording, sales, use, or other similar tax.  Each of the relevant state or local governmental officials or agents will forego the collection of any such tax or governmental assessment and accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment consistent with the applicable provisions of the Plan.

T.    Procedure for Payment of Professional Fees.    Current Court approved professionals shall not be subject to the fee application process for services rendered post-confirmation in furtherance of implementation of the confirmed Plan.

U.    Escrow Arrangements.    Unless otherwise stated in individual creditor treatments herein, the Debtor will no longer make any escrow payments for taxes, insurance, or any other expenses generally paid through escrowed funds.  The Debtor will pay such expenses directly from and after the Effective Date.  Escrowed funds held by a creditor shall be turned over to the Debtor on the Effective Date.

## VI.  PRESERVATION OF SECTION 506(c) CLAIMS

Notwithstanding confirmation of the Plan and the occurrence of the Effective Date, the Debtor shall have the right to seek recovery of the cost of maintaining and preserving any collateral or property.

## VII.  PRESERVATION OF CLAIMS AND AVOIDANCE ACTIONS

Notwithstanding anything to the contrary in the Plan or Disclosure Statement, the provisions of the Plan, Disclosure Statement, or Order Confirming Plan shall not have and are not intended to have, any res judicata or collateral estoppel effect with respect to any causes of action that the Debtor may assert, regardless of whether and to what extent such causes of action are specifically described in the Plan or Disclosure Statement.  Unless any causes of action are expressly waived, relinquished, released, compromised, or settled in the Plan or by Final Order of the Court, all such causes of action are expressly reserved and preserved for later adjudication and, therefore, no preclusion doctrine, including without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel, or laches shall apply so such causes of action upon or after confirmation of the Plan.  Furthermore, notwithstanding any provision or interpretation to the contrary, nothing in the Plan or Order Confirming Plan, including the entry thereof, shall be deemed to constitute a release, waiver, impediment, relinquishment, or bar, in whole or in part, of or to any recovery or any other claim, right, or cause of action possessed by the Debtor prior to the Effective Date.  This shall include, but is not limited to all pre-petition claims and any and all post-petition claims that he could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§ 545, 546, 547, 548, 550, and 542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

## VIII.  SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

The claims stated herein, by modification, Court Order, or other legally appropriate manner, may be modified throughout the course of payment under this Plan.  The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## IX.  PROVISIONS GOVERNING DISTRIBUTIONS

A.    <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made: (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information

described in clauses (i) or  (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B.     <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C.     <u>Cure Period</u>.   The failure by the Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until the Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the thirty (30) day cure period, the Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## X.  ACCEPTANCE OR REJECTION OF PLAN; EFFECT OF REJECTION BY AN IMPAIRED CLASS

A.     <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B.     <u>Acceptance by a Class of Creditors</u>.  Consistent with § 1126(c) of the Bankruptcy Code, and except as provided in § 1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C.     <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1)     Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed.  The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2)     Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3)     Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the

amount of the claim that the creditor may ballot.

(4)     Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D.     <u>Confirmation Hearing</u>.  The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E.     <u>Acceptances Necessary to Confirm the Plan</u>.  At the Confirmation Hearing, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class.  Under § 1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan.  Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F.     <u>Confirmation of Plan Without Necessary Acceptances</u>.  The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes.  In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class.  In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan entitled "Cramdown," for confirmation pursuant to the "cramdown" provisions of § 1129(b) of the Bankruptcy Code.  In connection therewith, the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with § 1129(b)(2)(A).

## XI.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds (2/3) in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## XII.  EFFECT OF CONFIRMATION

A.    Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.    Injunction.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims that the Debtor may have against any party in interest.  This injunction shall not affect any creditor's ability to enforce rights against non-Debtors and non-Debtor property.

## XIII.  RELEASE OF TITLE TO PROPERTY

A.    Vehicles.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with the provision.  This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan.  Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case.  The Debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

B.    Real Property.  Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, including the satisfaction or deemed cancellation of the security interest by the order confirming this Chapter 11 Plan or by other order of the bankruptcy court, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor.  The failure of any such party to comply with this section shall result in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes.  Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision.

This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XIV.  APPLICATION OF PLAN PAYMENTS

A.      All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

B.      Confirmation of the Plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. § 524(i).

## XV.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1.      to determine any and all objections to the allowance of claims and/or interests;

2.      to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3.      to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4.      to determine all controversies and disputes arising under or in connection with the Plan;

5.      to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6.      to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7.      to determine such other matters and for such other purposes as may be provided for in the Confirmation Order;

8.      to determine all disputes regarding property of the Estate;

9.      to establish and adjust procedures for the orderly administration of the Estate;

10.      to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11.      to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XVI.  MISCELLANEOUS PROVISIONS

A.      <u>Survival of Terms</u>.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.      <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.      <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.      <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.      <u>Liens</u>.  Except as otherwise expressly set forth herein, all liens remaining in favor of any creditor in this action against the real property that arose prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.      <u>Incorporation of Disclosure</u>.  All the terms and conditions of the Disclosure

Statement are incorporated herein by reference.

   G. <u>Credit Reporting</u>. Each Creditor who regularly makes reports to credit reporting bureaus shall ensure that their reports accurately reflect that the Debtor has filed bankruptcy and included all obligations owed to that Creditor in their Plan. Further, all Creditors who make post-petition reports to credit reporting bureaus shall ensure that their reports accurately reflect the terms of all orders, including but not limited to cash collateral and orders confirming the Debtor's Plan. Failure to make accurate reports to credit bureaus shall constitute a violation of automatic stay provisions of 11 U.S.C. § 362, if made post-petition but pre-confirmation. Alternatively, if erroneous reports are made post-confirmation, then those reports shall be treated as violations of the Order Confirming Plan after notice and a hearing on the alleged violations. The Debtor shall be exempted from the Fair Credit Reporting Act in pursuing a remedy against a Creditor for erroneous credit reporting and the Bankruptcy Court shall retain jurisdiction to hear such matters.

## XVII. DISCHARGE

   The Confirmed Plan will not discharge any debt provided for in this Plan until the Court grants a discharge. The Court may grant the Debtor's discharge upon (i) completion of all payments under this Plan, (ii) prior to completion of all payments under this Plan upon the Debtor providing assurance that all payments will be made, e.g. adequate security interest provided to each class of creditors with payments remaining, or (iii) as otherwise provided in § 1141(d)(5) of the Bankruptcy Code. The Debtor will not be discharged from any debt excepted from discharge under § 523 of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure. Upon entry of the discharge, the discharge will be fully effective against all Creditors regardless of whether they have voted to accept or reject the Plan and regardless of whether the Plan is confirmed by consent or by resort to the provisions of section 1129(b) of the Bankruptcy Code. However, even though no discharge may be entered until all payments are completed, the Debtor will seek to have the case closed upon substantial consummation under § 1101(2). Further, the Debtor will seek to have the case automatically re-opened pursuant to § 350(b) without the payment of a fee, upon the filing and service on all creditors and the Bankruptcy Administrator, of a Notice of Completion of Plan Payments and Request for Entry of Discharge, allowing all parties 20 days to file a response.

Dated this the 27th day of March, 2017.

         <u>s/Jonathan E. Friesen</u>
         Jonathan E. Friesen
         N.C. State Bar No. 31535
         Email: jef@gillespieandmurphy.com
         Gillespie & Murphy, P.A.
         Post Office Drawer 888
         New Bern, North Carolina 28563
         Telephone: (252) 636-2225
         Facsimile: (252) 636-0625
         *Attorneys for Debtor*

s/Ashley T. Wallace
Ashley T. Wallace

s/Sara J. Wallace
Sara J. Wallace

# EXHIBIT A

# PROMISSORY NOTE

SATISFACTION: The debt evidenced by this Note has been satisfied in full this _____ day of _____, _____

Signed: _____

Leland, N. C.

$136,000.00                                                                    Date: [EFFECTIVE DATE]

   FOR VALUE RECEIVED the undersigned, jointly and severally, promise to pay to Class 7, the General Unsecured Class in the bankruptcy matter entitled "In Re Ashley T. Wallace and Sara J. Wallace" with case number 16-00859-5-DMW filed in the United States Bankruptcy Court for the Eastern District of North Carolina, or order, each General Unsecured Creditor's pro-rata portion of the principal sum of One Hundred Thirty-Six Thousand and 00/100 DOLLARS ($136,000.00).  Pursuant to the Second Amended Plan of Reorganization ("Plan") filed in the above referenced bankruptcy matter, the undersigned Debtors shall sell the real property located at 998 Beech Mountain Parkway, Beech Mountain, North Carolina and pay the net proceeds of the sale, as described in the Plan, to the Class 7, General Unsecured Creditors.  In the event that the net proceeds of the sale do not pay the balance of this Promissory Note in full, the remaining balance shall be paid as follows:  The Debtors shall pay remaining balance of the Promissory Note in annual payments with interest from the date of the sale of the above referenced real property at the rate of three per cent (3%) per annum on the unpaid balance until paid or until default, both principal and interest payable in lawful money of the United States of America, at the offices of the Class 7 General Unsecured Creditors as stated in the Bankruptcy Petition of Ashley T. and Sara J. Wallace, or as stated it the Proof of Claim filed by the creditors, if any.  The principal and interest shall be due and payable as follows:  The Debtors shall make five (5), equal, consecutive annual payments of principal and interest beginning on that date which is one year from the sale of the above referenced real property with remaining payments being due and payable on the same day of each consecutive year thereafter.

   If not sooner paid, the entire remaining indebtedness shall be due and payable on that date which is five (5) years from the sale of the above referenced real property.

   If payable in installments, each such installment shall, unless otherwise provided, be applied first to payment of interest then accrued and due on the unpaid principal balance, with the remainder applied to the unpaid principal.

   Unless otherwise provided, this Note may be prepaid in full or in part at any time without penalty or premium. Partial prepayments shall be applied to installments due in reverse order of their maturity.

   In the event of (a) default in payment of any installment of principal or interest hereof as the same becomes due and such default is not cured within ten (10) days from the due date, or (b) default under the terms of any instrument securing this Note, and such default is not cured within fifteen (15) days after written notice to maker, then in either such event the distribution agent for the General Unsecured Creditors, appointed by the United States Bankruptcy Court for the Eastern District of North Carolina, may file a notice of default in the United States Bankruptcy Court for the Eastern District of North Carolina in the above referenced bankruptcy and send a demand to the Debtors requesting that the remainder of the principal sum, together with all interest accrued thereon and, be declared at once due and payable and direct the Trustee of the deed of trust securing this Note exercise the remedies allowed by the deed of trust in the event of default.  Failure to exercise this option shall not constitute a waiver of the right to exercise the same at any other time.

   All parties to this Note, including maker and any sureties, endorsers, or guarantors hereby waive protest, presentment, notice of dishonor, and notice of acceleration of maturity and agree to continue to remain bound for the payment of principal, interest and all other sums due under this Note and the deed of trust notwithstanding any change or changes by way of release, surrender, exchange, modification or substitution of any security for this Note or by way of any extension or extensions of time for the payment of principal and interest; and all such parties waive all and every kind of notice of such change or changes and agree that the same may be made without notice or consent of any of them.

   This Note is to be governed and construed in accordance with the laws of the State of North Carolina.

   This Note is given to evidence the debt owed to the General Unsecured Creditors of Ashley and Sara Wallace in the above referenced bankruptcy matter, and is secured by a deed of trust which is a first lien on the real property therein described.

   IN TESTIMONY WHEREOF, the undersigned executes this Promissory Note in such form as to be binding, and has  its seal the word "SEAL" appearing beside the signature, all as of the day and year first above written.


_____ (SEAL)

Ashley T. Wallace


_____ (SEAL)

Sara J. Wallace

**EXHIBIT B**

# NORTH CAROLINA DEED OF TRUST

SATISFACTION:  The debt secured by the within Deed of Trust
together with the note(s) secured thereby has been satisfied in full.
This the _____ day of _____, 20____
Signed:_____
_____

Parcel Identifier No._____ Verified by _____ County on the _____ day of _____, 20__
By:_____

Mail/Box to: Jonathan E. Friesen, PO Drawer 888, New Bern, NC  28563

This instrument was prepared by: Jonathan E. Friesen, PO Drawer 888, New Bern, NC  28563

Brief description for the Index:_____

THIS DEED of TRUST made this _____ day of November, 2016, by and between:

| GRANTOR | TRUSTEE | BENEFICIARY |
|---|---|---|
| ASHLEY and SARA WALLACE<br>10299 Croft Point Land<br>Leland, NC  28451 | TBD by Bankruptcy Court | General Unsecured Creditors of Ashley T. Wallace and Sara J. Wallace, Chapter 11 Bankruptcy Case Number 16-00859-5-DMW, Eastern District North Carolina Bankruptcy Court. |

Enter in appropriate block for each party: name, address, and, if appropriate, character of entity, e.g. corporation or partnership.

The designation Grantor, Trustee, and Beneficiary as used herein shall include said parties, their heirs, successors, and assigns, and shall include singular, plural, masculine, feminine or neuter as required by context.

WHEREAS, Ashley and Sara Wallace are debtors in bankruptcy pursuant to a Chapter 11 Bankruptcy Petition filed in the Bankruptcy Court for the Eastern District of North Carolina, with case number 16-00859-5-DMW; and

1

WHEREAS, pursuant to the Order Confirming the Chapter 11 Plan of Ashley and Sara Wallace entered on _____, 2017, the Debtors executed a Promissory Note, as further described below, in favor of the General Unsecured Creditors of Ashley and Sara Wallace and are further providing such creditors security for such note by the execution and recording of this Deed of Trust.

WITNESSETH, That whereas the Grantor is indebted to the Beneficiary in the principal sum of One Hundred Thirty-Six Thousand and 00/100 Dollars ($136,000.00), as evidenced by a Promissory Note dated _____, the terms of which are incorporated herein by reference. The final due date for payments of said Promissory Note, if not sooner paid, is five years from the date of the sale of the real property, described below.

NOW, THEREFORE, as security for said indebtedness, advancements and other sums expended by Beneficiary pursuant to this Deed of Trust and other valuable consideration, the receipt of which is hereby acknowledged, the Grantor has bargained, sold, given and conveyed and does by these presents bargain, sell, give, grant and convey to said Trustee, his heirs, or successors, and assigns, all of that certain lot, parcel of land or condominium unit situated in the City of Banner Elk, Watauga County, North Carolina, (the "Premises") and more particularly described as follows:

See Exhibit A, attached hereto and incorporated herein by reference.

TO HAVE AND TO HOLD said Premises with all privileges and appurtenances thereunto belonging, to said Trustee, his heirs, successors, and assigns forever, upon the trusts, terms and conditions, and for the uses hereinafter set forth.

If the Grantor shall pay the Note secured hereby in accordance with its terms, together with interest thereon, and any renewals or extensions thereof in whole or in part, all other sums secured hereby and shall comply with all of the covenants, terms and conditions of this Deed of Trust, then this conveyance shall be null and void and may be canceled of record at the request and the expense of the Grantor.

If, however, there shall be any default (a) in the payment of any sums due under the Note, this Deed of Trust or any other instrument securing the Note and such default is not cured within ten (10) days from the due date, or (b) if there shall be default in any of the other covenants, terms or conditions of the Note secured hereby, or (c) any failure or neglect to comply with the covenants, terms or conditions contained in this Deed of Trust or any other instrument securing the Note, and such default is not cured within fifteen (15) days after written notice, then and in any of such events, without further notice, it shall be lawful for and the duty of the Trustee, upon request of the distribution agent for Beneficiary appointed by the United States Bankruptcy Court for the Eastern District of North Carolina, and after notice of default filed in the Bankruptcy Court for the Eastern District of North Carolina in case number 6-00859-5-DMW and demand to the Debtors to pay the balance of the Note, to sell the land herein conveyed at public auction for cash, after having first giving such notice of hearing as to commencement of foreclosure proceedings and obtained such findings or leave of court as may then be required by law and giving such notice and advertising the time and place of such sale in such manner as may then be provided by law, and upon such sale and any resales and upon compliance with the law then relating to foreclosure proceedings under power of sale to convey title to the purchaser in as full and ample manner as the Trustee is empowered. The Trustee shall be authorized to retain an attorney to represent him in such proceedings.

The proceeds of the Sale shall, after the Trustee retains his commission, together with reasonable attorneys fees incurred by the Trustee in such proceedings, be applied to the costs of sale, including, but not limited to, costs of collection, taxes, assessments, costs of recording, service fees and incidental expenditures, the amount due on the Note hereby secured and advancements and other sums expended by the Beneficiary according to the provisions hereof and otherwise as required by the then existing law relating to foreclosures. The Trustee's commission shall be five percent (5%) of the gross proceeds of the sale or the minimum sum of $1,500.00 whichever is greater, for a completed foreclosure.

And the said Grantor does hereby covenant and agree with the Trustee as follows:

1. INSURANCE. Grantor shall keep all improvements on said land, now or hereafter erected, constantly insured for the benefit of the Beneficiary against loss by fire, windstorm and such other casualties and contingencies, in such manner and in such companies and for such amounts, not less than that amount necessary to pay the sum secured by this Deed of Trust, and as may be satisfactory to the Beneficiary. Grantor shall purchase such insurance, pay all premiums therefor, and shall deliver to Beneficiary such policies along with evidence of premium payments as long as the Note secured hereby remains unpaid. If Grantor fails to purchase such insurance, pay premiums therefor or deliver said policies along with evidence of payment of premiums thereon, then Beneficiary, at his option, may purchase such insurance. Such amounts paid by Beneficiary shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary. All proceeds from any insurance so maintained shall at the option of Beneficiary be applied to the debt secured hereby and if payable in installments, applied in the inverse order of maturity of such installments or to the repair or reconstruction of any improvements located upon the Property.

2. TAXES, ASSESSMENTS, CHARGES. Grantor shall pay all taxes, assessments and charges as may be lawfully levied against said Premises within thirty (30) days after the same shall become due. In the event that Grantor fails to so pay all taxes, assessments and charges as herein required, then Beneficiary, at his option, may pay the same and the amounts so paid shall be added to the principal of the Note secured by this Deed of Trust, and shall be due and payable upon demand of Beneficiary.

3. ASSIGNMENTS OF RENTS AND PROFITS. Grantor assigns to Beneficiary, in the event of default, all rents and profits from the land and any improvements thereon, and authorizes Beneficiary to enter upon and take possession of such land and improvements, to rent same, at any reasonable rate of rent determined by Beneficiary, and after deducting from any such rents the cost of reletting and collection, to apply the remainder to the debt secured hereby.

2

4. PARTIAL RELEASE. Grantor shall not be entitled to the partial release of any of the above described property unless a specific provision providing therefor is included in this Deed of Trust. In the event a partial release provision is included in this Deed of Trust, Grantor must strictly comply with the terms thereof. Notwithstanding anything herein contained, Grantor shall not be entitled to any release of property unless Grantor is not in default and is in full compliance with all of the terms and provisions of the Note, this Deed of Trust, and any other instrument that may be securing said Note.

5. WASTE. The Grantor covenants that he will keep the Premises herein conveyed in as good order, repair and condition as they are now, reasonable wear and tear excepted, and will comply with all governmental requirements respecting the Premises or their use, and that he will not commit or permit any waste.

6. CONDEMNATION. In the event that any or all of the Premises shall be condemned and taken under the power of eminent domain, Grantor shall give immediate written notice to Beneficiary and Beneficiary shall have the right to receive and collect all damages awarded by reason of such taking, and the right to such damages hereby is assigned to Beneficiary who shall have the discretion to apply the amount so received, or any part thereof, to the indebtedness due hereunder and if payable in installments, applied in the inverse order of maturity of such installments, or to any alteration, repair or restoration of the Premises by Grantor.

7. WARRANTIES. Grantor covenants with Trustee and Beneficiary that he is seized of the Premises in fee simple, has the right to convey the same in fee simple, that title is marketable and free and clear of all encumbrances, and that he will warrant and defend the title against the lawful claims of all persons whomsoever, except for the exceptions hereinafter stated. Title to the property hereinabove described is subject to the following exceptions:  None.


8. SUBSTITUTION OF TRUSTEE. Grantor and Trustee covenant and agree to and with Beneficiary that in case the said Trustee, or any successor trustee, shall die, become incapable of acting, renounce his trust, or for any reason the holder of the Note desires to replace said Trustee, then the holder may appoint, in writing, a trustee to take the place of the Trustee; and upon the probate and registration of the same, the trustee thus appointed shall succeed to all rights, powers and duties of the Trustee.

| X | **THE FOLLOWING PARAGRAPH, 9. SALE OF PREMISES, SHALL NOT APPLY UNLESS THE BLOCK TO THE LEFT MARGIN OF THIS SENTENCE IS MARKED AND/OR INITIALED.** |

9. SALE OF PREMISES. Grantor agrees that if the Premises or any part thereof or interest therein is sold, assigned, transferred, conveyed or otherwise alienated by Grantor, whether voluntarily or involuntarily or by operation of law [other than: (i) the creation of a lien or other encumbrance subordinate to this Deed of Trust which does not relate to a transfer of rights of occupancy in the Premises; (ii) the creation of a purchase money security interest for household appliances; (iii) a transfer by devise, descent, or operation of law on the death of a joint tenant or tenant by the entirety; (iv) the grant of a leasehold interest of three (3) years or less not containing an option to purchase; (v) a transfer to a relative resulting from the death of a Grantor; (vi) a transfer where the spouse or children of the Grantor become the owner of the Premises; (vii) a transfer resulting from a decree of a dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Grantor becomes an owner of the Premises; (viii) a transfer into an inter vivos trust in which the Grantor is and remains a beneficiary and which does not relate to a transfer of  rights of occupancy in the Premises], without the prior written consent of Beneficiary, Beneficiary, at its own option, may declare the Note secured hereby and all other obligations hereunder to be forthwith due and payable. Any change in the legal or equitable title of the Premises or in the beneficial ownership of the Premises, including the sale, conveyance or disposition of a majority interest in the Grantor if a corporation or partnership, whether or not of record and whether or not for consideration, shall be deemed to be the transfer of an interest in the Premises.

10. ADVANCEMENTS. If Grantor shall fail to perform any of the covenants or obligations contained herein or in any other instrument given as additional security for the Note secured hereby, the Beneficiary may, but without obligation, make advances to perform such covenants or obligations, and all such sums so advanced shall be added to the principal sum, shall bear interest at the rate provided in the Note secured hereby for sums due after default and shall be due from Grantor on demand of the Beneficiary. No advancement or anything contained in this paragraph shall constitute a waiver by Beneficiary or prevent such failure to perform from constituting an event of default.

11. INDEMNITY. If any suit or proceeding be brought against the Trustee or Beneficiary or if any suit or proceeding be brought which may affect the value or title of the Premises, Grantor shall defend, indemnify and hold harmless and on demand reimburse Trustee or Beneficiary from any loss, cost, damage or expense and any sums expended by Trustee or Beneficiary shall bear interest as provided in the Note secured hereby for sums due after default and shall be due and payable on demand.

12. WAIVERS. Grantor waives all rights to require marshaling of assets by the Trustee or Beneficiary. No delay or omission of the Trustee or Beneficiary in the exercise of any right, power or remedy arising under the Note or this Deed of Trust shall be deemed a waiver of any default or acquiescence therein or shall impair or waive the exercise of such right, power or remedy by Trustee or Beneficiary at any other time.

13. CIVIL ACTION. In the event that the Trustee is named as a party to any civil action as Trustee in this Deed of Trust, the Trustee shall be entitled to employ an attorney at law, including himself if he is a licensed attorney, to represent him in said action and the reasonable attorney's fee of the Trustee in such action shall be paid by the Beneficiary and added to the principal of the Note secured by this Deed of Trust and bear interest at the rate provided in the Note for sums due after default.

14. PRIOR LIENS. Default under the terms of any instrument secured by a lien to which this Deed of Trust is subordinate shall constitute default hereunder.

15. OTHER TERMS.   **THIS DEED OF TRUST SHALL BE DEEMED CANCELLED OF RECORD UPON THE DISBURSEMENT OF THE NET PROCEEDS OF THE SALE OF THE PROPERTY PURSUANT TO THE TERMS OF THE ORDER CONFIRMING THE SECOND AMENDED PLAN OF REORGANIZATION IN THE ABOVE REFERENCE BANKRUPTCY MATTER.**

NC Bar Association Form No. 5 © 1976, Revised © 9/1985, 2002, 2013
Printed by Agreement with the NC Bar Association – 1981

This standard form has been approved by:
North Carolina Bar Association – NC Bar Form No. 5

IN WITNESS WHEREOF, the Grantor has duly executed the foregoing as of the day and year first above written.

_____          _____(SEAL)
          (Entity Name)                                                      Ashley T. Wallace

By:_____          _____(SEAL)
      Title:_____                                  Sara J. Wallace

By:_____          _____(SEAL)
      Title:_____

By:_____          _____(SEAL)
      Title:_____

_____

State of North Carolina - County of _____

      I, the undersigned Notary Public of the County and State aforesaid, certify that <u>Ashley T. Wallace and Sara J. Wallace</u> personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.  Witness my hand and Notarial stamp or seal this _____ day of _____, 2016.

My Commission Expires:_____          _____
                             Notary Public

_____

State of North Carolina - County of _____

      I, the undersigned Notary Public of the County and State aforesaid, certify that _____ _____ personally appeared before me this day and acknowledged the due execution of the foregoing instrument for the purposes therein expressed.  Witness my hand and Notarial stamp or seal this _____ day of _____, 20__.

My Commission Expires:_____          _____
                             Notary Public

_____

State of North Carolina - County of _____

      I, the undersigned Notary Public of the County and State aforesaid, certify that _____ _____ personally came before me this day and acknowledged that _he is the _____ of _____, a North Carolina  or _____ corporation/limited liability company/general partnership/limited partnership (strike through the inapplicable), and that by authority duly given and as the act of such entity, __he signed the foregoing instrument in its name on its behalf as its act and deed.  Witness my hand and Notarial stamp or seal, this _____ day of _____, 20__.

My Commission Expires:_____          _____
                             Notary Public

NC Bar Association Form No. 5 © 1976, Revised © 9/1985, 2002, 2013          This standard form has been approved by:
Printed by Agreement with the NC Bar Association – 1981          North Carolina Bar Association – NC Bar Form No. 5